Lane *v.* Farmer.

NANCY LANE *v.* W. H. FARMER *et al.*

1. LIMITATIONS. *Husband and Wife. Survivorship. Guardian.* Upon the marriage of a female ward the guardianship ceases, and the husband is at once vested with the right to demand, sue for, and receive any funds in the hands of the guardian, or any choses in action of the wife, and the period required to create the bar of the statute of limitations, or to raise the presumption of payment would begin to run from that time. And if the wife afterwards take the right of action by survivorship, or divorce, she would take them in the condition in which he had left them.

2. GUARDIAN AND WARD. *Resulting trust. Husband and Wife.* If the late guardian of a female ward and of other wards, several years after the marriage of such female ward and after he had settled with the other wards, cause execution to issue on a judgment recovered by him as guardian before the marriage, and purchase land sold under it, the presumption would be that he acted under a claim of right and for himself, and if any resulting or constructive trust would arise from the fact that the husband and wife had funds in their hands of the guardian or an interest in the judgment, the trust would be in favor of the husband, and, if he elected to follow the fund into the land, it would be a reduction of the fund or chose in action into possession.

3. CHANCERY PLEADINGS AND PRACTICE. *Stale demands.* There is no intendment in favor of stale demands, and a clear case must be made by the claimant in order to secure the aid of a court of equity.

4. SAME. *How a bill may be dismissed.* The court may dismiss a bill *mero motu* when it contains no equity.

FROM CLAIBORNE.

Appeal from the Chancery Court at Tazewell. H. C. SMITH, Ch.

J. L. ROGERS for complainant.

M. L. CARR and F. M. FULKERSON for defendants.

COOPER, J., delivered the opinion of the court.

The original bill in this case was filed on the 29th of March, 1882, and the amended bill in November of that year. The case is before us on demurrer to the bills, and the rights of the complainant turn upon the facts disclosed by the bills. But the record is so badly written by an unskilled, and unintelligent scribe, that it is almost impossible to ascertain the facts with absolute certainty.

On September 14, 1858, S. J. Barnard, as guardian of the five children of his deceased brother, George Barnard, of whom the complainant was one, recovered a judgment in the circuit court of Claiborne county, against Benjamin Cloud and John Devault for $2,494 and costs of suit. In the year 1867, Barnard caused an execution to be issued on this judgment, and levied upon two tracts of land as the property of John Devault. On August 12, 1867, both of these tracts were sold under the levy and bought by Barnard, as guardian, one of them at $1,000, the other at $1,500 or $500, the record stating the amount both ways. On October 21, 1868, Barnard assigned in writing his bid, and interest in the lands thus acquired to his wife, Nancy Barnard, the assignment having been found in the county court clerk's office after the filing of the original bill. So far as complainant knows, Barnard never took a sheriff's deed for the land, and the bill avers the transfer to the wife was fraudulent as to complainant, and that the wife never had possession of the land. Shortly after the date of his assignment, Bar-

nard left the State with his family, and died several years ago insolvent. His widow and heirs were made defendants, as non residents, by publication. In December, 1869, John Devault conveyed one of the tracts of land, the one on which he resided, to his son, daughter and son-in-law by deed for a recited consideration of $1,000 paid to him or for him on his liabilities. This deed was duly registered on December 15, 1869. The bill charges that the conveyance was intended to defraud creditors, that John Devault continued in possession of the land until his death in 1882, and his heirs and personal representatives are made defendants. In the year 1869, Evans & Thomas, as creditors of S. J. Barnard, filed an attachment bill against him as a non-resident of the State, and attached the other tract of land as his property, to subject it to the payment of their debt. Such proceedings were had in the cause that a decree was rendered in favor of Evans & Thomas, the land sold thereunder, and bought by Thomas for $409.02. The sale was confirmed, and all the title and interest of Barnard and Devault therein divested out of them, and vested in Thomas in fee. In January, 1872, Thomas sold and conveyed the land by quit-claim deed to Hugh Farmer, who died in 1877 testate, and his devisees are made defendants. The bill charges that Evans & Thomas had personal knowledge that the land was bought by Barnard as guardian, and that the attachment proceedings were void for certain specified defects.

After the recovery of the judgment against Devault in 1858, and before the sale of his lands thereunder,

two of George Barnard's children died intestate, without
wife or child.    The complainant, Nancy, intermarried
in 1859 with James Lane.    The original bill was filed
in the name of the husband and wife, with an alle-
gation that he had deserted her for about two years,
the wife using the husband's name for her benefit
under the Code, section 2805.    Before the filing of
the amended bill, the complainant had obtained a di-
vorce from her husband, and she filed that bill in her
own name alone.    The complainant says that after the
recovery by Barnard of the judgment against Devault
and before the sale of the land, he, Barnard, as guardian
settled with his other wards, but never paid complain-
ant " anything of consequence " of her share of her
father's estate.    Her husband never reduced, or took
steps to reduce her interest in the property to pos-
session.    She further alleges, on information, that when
Barnard bought the lands at the execution sale he
bought with her share exclusively.    At any rate, she
says, she is entitled to a third of the recovery.

The bill seeks to reach the land by way of resulting
trust to the extent of the interest of the complainant in
the consideration paid, and for an amount of rents
against the defendants who have been in possession.
The bill avers, however, that complainant cannot say
whether or not the sales of the land under the judg-
ment and execution against Devault are legal and such
as to pass title out of Devault.    If it should be
found that they were not, then she asks that the bids
be set aside so far as they might go as a credit on
the judgment, and that she have execution of the judg-

ment; and that she have execution, at any rate, to the extent of the unpaid balance of the judgment. To this end, she asks that an administrator of the estate of S. J. Barnard be appointed.

The bill does not show when the complainant came of age, but the fact is perhaps not important. For, upon her intermarriage with Lane in 1859 the guardianship of Barnard at once ceased: *Jones* v. *Ward*, 10 Yer., 168; *State* v. *Parker*, 8 Baxt., 497. From that time, the husband became clothed with the right to demand, receive, and sue for the distributive share of his wife in her father's estate, or in any funds in the hands of the late guardian: *Cox* v. *Scott*, 9 Baxt., 305. The guardian might settle with him, and pay him the money due the wife: *Sanders* v. *Forgasson*, 3 Baxt., 249. And the right of action of the husband and wife against the guardian growing out of the guardianship then accrued: *State* v. *Parker*, 8 Baxt., 497. The bill, considering the original and amended bill as one, is singularly reticent as to what may have passed between the husband and the guardian when the latter was settling with his wards. The only statement bearing on the subject is that the husband never reduced, nor took steps to reduce to possession the complainant's rights and interest in the property mentioned in the bills. But that might have been because he knew that she had no rights. For aught that appears, the husband may have settled with the late guardian as he had the right to do, and received all the money she was entitled to.

The bill, and the argument submitted in support

Lane *v.* Farmer.

of it proceed upon the ground that S. J. Barnard, in the issuance of execution on the judgment recovered by him against Devault, and the sale and purchase of his lands thereunder, was acting as the guardian of the children of George Barnard, or at any rate of the complainant. But the bill itself expressly avers that Barnard had previously thereto settled as guardian with all his wards except the complainant. He had, consequently, ceased to sustain any fiduciary relation to the other wards, was entitled to their shares of the judgment, and to the extent of those shares was acting for himself, and clearly in his own right. His guardianship of the complainant had also ceased with her marriage eight years before. He was, therefore, not acting as guardian at all in the matter, notwithstanding the averment of the bill, which, in the absence of facts properly pleaded to sustain it, must be considered as the unwarranted inference of the complainant. Even if he had been acting in a fiduciary relation to the complainant as to part of the judgment, and for himself as to the residue, there is authority for holding that the complainant could not claim the land, but only a lien thereon for the trust fund used in its purchase: *Treadwell* v. *McKeen,* 7 Baxt., 450. Perhaps the weight of authority is otherwise: *Gordon* v. *English,* 3 Lea, 638. But if he stood in no fiduciary relation to the complainant, and appropriated her funds in the purchase of the land, no resulting trust would arise in her favor: *Hawthorne* v. *Brown,* 5 Sneed, 462; *Ensley* v. *Balentine,* 4 Hum., 233. A fair deduction from the facts alleged in the bill is that Barnard used the judgment

in question as his own under a claim of right, and that no resulting trust was thereby created in the land in favor of complainant or her husband, the latter being the person then clearly entitled to the money due from the late guardian to the wife. And this money was not a specific sum, nor was it paid for a distinct interest in, or aliquot part of the land bought, so as to create a resulting trust proper: Perry on Trusts, sec. 132; *Crop* v. *Norton,* 2 Atk., 74: *White* v. *Carpenter,* 2 Paige, 217.

But the fact that the husband was entitled to the funds of the wife in the hands of the guardian, at the time of the alleged use of such funds by the guardian in the purchase of the lands in controversy, is conclusive upon the rights of the complainant, even if the facts were sufficient to create a resulting trust. The trust must have been in his favor, as the owner of the funds, not in favor of the wife. If he elected to take the land, it would be a reduction into possession of the chose in action thus converted. If he did not make the election, the *chose in action,* that is the claim against the guardian and the specific funds in his hands would remain. He, the husband, is not a party to the bill as amended, and therefore the question of his rights are not before us. If, as the complainant. asserts in her bill, her divorce operated, as would his death, to give her by survivorship choses in action not reduced into possession by him during coverture, she would only take the choses in action, not an interest in land created by their conversion into realty. The defendants in possession of the land,

and those under whom they claim have certainly acquired a title to the land as against the husband. They have been in possession, under an assurance of title purporting to convey a fee for more than seven years, adversely to all the world. The possession of John Devault of the land conveyed to his children must be taken to be in subordination to the legal title of the children until the contrary appears, and the bill contains no fact inconsistent with this conclusion, even if his deed be treated as fraudulent to his creditors. The complainant can stand in no better position than her husband. And even if she could now elect to follow the debt into the land, it would only be because she had stepped into the shoes of the husband, and must take his rights as he left them. A resulting trust, it need scarcely be said, like any other trust arising by implication of law, may be barred by the statute of limitations: *Cummings* v. *Stovall,* 6 Lea, 683. And the statute of seven years (Code, sec. 2786), will run in favor of the heirs of S. J. Barnard: *Earles* v. *Earles,* 3 Head, 366.

The whole case of the complainant rests upon a mistake as to the effect of her coverture on the rights she now seeks to assert. It has been assumed that her marriage was a sufficient excuse for the long delay. But the rights of action of the wife vested at once in the husband upon their marriage. The right to call the guardian to account, to assert her claim to any part of the judgment against Devault, or to follow the wife's funds into the land, belonged to him. He could have sued at any time. The rights of the wife were

to 'a settlement out of her choses in action if she had demanded it during coverture, or to the choses themselves upon the husband's death before reducing them to possession. If the divorce confers upon her the latter right, it would only be with all the usual incidents. But by survivorship she would take the choses in action in the condition in which they were left by the husband. If they had been barred by the statute of limitations by his neglect to sue, they would remain barred in her hands. If he has allowed the presumption of payment to arise from lapse of time, the presumption will continue as against her. There is not a single fact stated in the bill which tends to rebut the presumption of the payment of the judgment in question from lapse of time, nor the presumption of payment by the guardian to the husband of the wife's funds in his hands. If the husband is estopped for any reason to enforce the judgment, or recover the land, the wife is equally estopped, for she necessarily takes both rights exactly where he left them.

We can conceive of a state of facts in relation to the land in controversy which might have conferred upon the wife rights independent of the husband. If, for example, at the time of the levy and sale there had been an agreement between the husband and wife on the one side and the late guardian on the other, that her funds in the hands of the guardian or her interest in the judgment, if she had such funds or interest, should be used for her benefit in the purchase of the land, and the title taken to her, a trust might have been created which equity would enforce *recenti*

Lane *v.* Farmer.

*facto.* But no such case is made, the bill entirely ignoring the rights of the husband, and treating the fund in the guardian's hands as separate estate, or subject to all the incidents of a wife's separate estate. After so great a lapse of time, during which no reason is shown why the husband did not enforce his rights, if in fact he failed to do so, the court will not deal in conjectures in view of possible rights. The judgment in controversy was recovered nearly a quarter of a century before the filing of the bill, and the land sold and bought fifteen years ago. Under these circumstances, and especially when the active parties in the transaction called in question have died, it is the duty of a party coming into a court of equity for relief to make out a clear case. There is no intendment in favor of stale demands.

The demurrers were not drawn with a view to the aspect in which we have considered the case. The bill contains no equity, and should have been dismissed by the chancellor *mero motu: Earles* v. *Earles,* 3 Head, 366. And the decree which he ought to have rendered will be made by this court.

Dismiss the bill with costs.