# WHITE v. KNIGHT, County Judge, et al.—238 S. W. (2d) 745.

Eastern Section.   December 1, 1950.

Petition for Certiorari Denied by Supreme Court, March 9, 1951.

O. W. McKenzie, of Dayton, and L. N. Spears, of Chattanooga, for appellant.

C. P. Swafford, Walter H. Cheers, both of Dayton, for appellees.

WILLIAM G. BROWN, Sp. J. Complainant, Walter White filed his bill in the Chancery Court of Rhea County seeking an injunction to prevent the County Court from electing his successor to the office of superintendent of Public Instruction for Rhea County. The case is before this court on the Chancellor's decree of dismissal.

Complainant was elected to the office under provisions of Chapter 443 of the Private Acts of 1941 for a four year term beginning July 1, 1946. This Act fixes the term of office for four years and until a successor is elected and qualified. It was repealed by Chapter 28 of the Private Acts of 1949, which became effective January 18, 1949. By virtue of this repeal, the Superintendent of Public Instruction for Rhea County would thereafter be elected as provided by general statute, Code Section 2320b.

Section 2320b provides that the election of the County Superintendent of Public Instruction shall be held at the first meeting of the Quarterly County Court in the year 1945 and quadrennially thereafter. Since Rhea County was operating under a private act in 1945 and 1949, no election was held as provided by the general act in either year.

On June 22, 1950, ten Justices of the Peace of Rhea County placed an advertisement in the Dayton Herald announcing that an election was to be held for the office of Superintendent of Schools at the Court's regular meeting July 3, 1950.

On July 1st complainant applied for an injunction to prevent the holding of said election as advertised on July 3, 1950, or any other date in July 1950. In the bill he also asked that his rights to said office be declared until the next regular election as provided by law. A fiat was granted July 1, 1950, and the bill was filed July 3rd. Defendants upon being notified of the injunction took no action on July 3rd relative to electing a successor to complainant, and so far as the record discloses took none during July 1950. Answer was filed by defendants, together with motion to dissolve the injunction. Prior to the hearing on the motion, defendants amended their answer to show that complainant had not made bond within five days of the granting of the fiat. At the hearing the Chancellor found that since no bond had been filed within five days from the time of the granting of the fiat, there was no injunction in force.

The Rules of Practice for the Chancery Court, Rule 5, Section 5, Section 10605 of the Code, provides that the bond required by a fiat shall be executed or taken within five days after the date of such fiat. Upon the failure of the complainant to file such a bond within five days, there was no injunction in force to dissolve, and we think the Chancellor was correct in so holding.

Thereupon the Court proceeded to consider the bill as an application for an injunction and finding that complainant was not entitled thereto, dismissed the bill. If the bill shows on its face that the complainant is entitled to no relief, it may be dismissed on a motion to

dissolve the injunction, Merriman v. Norman, 56 Tenn. 269; Mayse v. Biggs, 40 Tenn. 36; or by the Court on its own motion, Lane v. Farmer, 79 Tenn. 568.

If there was no equity on the face of the bill or if complainant could not maintain the bill in any event, the action of the Chancellor was correct. We now consider that question.

■■ Under the provisions of the 1941 Act, at its regular session in 1946 the Rhea County Court elected complainant County Superintendent for a term of four years, which term would expire July 1, 1950. This Act, as hereinbefore pointed out, was repealed effective January 18, 1949, leaving the general section of the Code applicable to Rhea County. Under the plain provisions of the Act of 1941, complainant's term expired July 1, 1950. The question is whether Section 2320b authorizes the election of his successor or whether he holds over until 1953, the expiration of the regular four-year term provided by Section 2320b. Insistence is made that since the County Court did not elect a County Superintendent under the general law in 1949 that it is prevented from doing so until 1953. This we think is an erroneous conclusion. Section 2320b provides: "In all cases where now or hereafter the method of election shall not be fixed differently by special legislation, the quarterly county court of the several counties of this state are hereby authorized to elect some person possessing the appropriate qualifications as county superintendent of public instruction. The election thereof shall be conducted in the same manner as other elections by the quarterly county court and shall be held at the first meeting of said quarterly county court, in the year 1945 and quadrennially thereafter. The person so elected shall possess all qualifications

therefor now required by law and upon his election, shall execute bond in an amount to be fixed by the county judge or chairman and likewise take an oath to faithfully discharge the duties of his office. The term of such person so elected shall begin on January 15 next following his or her election, *except in cases where for any cause whatsoever such election be not held on or before January 15 of the appropriate year, then such term shall begin ten days following the date of such election.*" (Emphasis ours.)

We construe this statute to mean that when complainant's term of office expired on July 1, 1950, the County Court was authorized to elect his successor at any time after July 1, 1950, and that the term of office of his successor would begin ten days following the date of such election. The fact that there was a private act in force which prevented an election being held under Section 2320b was a cause excusing such an election within the meaning of said section. To hold otherwise would permit complainant under his election in 1946 to hold until 1953, contrary to the express term provided for him by the very act under which he was elected. His term would thus be extended merely by the repeal of the special act. A situation similar in principle was discussed in State ex rel. Tidwell v. Morrison, 152 Tenn. 59, 274 S. W. 551, 552:

"It is urged, however, that the county court of Lawrence county, having failed to hold an election for this office at its January, 1925 term, cannot lawfully hold such an election at a subsequent term, preceding the January, 1927, term. In other words, that the present incumbent of the office of county superintendent must hold over for another full term of two years.

"This argument is not well founded. In Lynch v. Lafland et al., 44 Tenn. [96] (4 Cold.) 96, it appeared that the duty of electing a city physician was devolved upon the board of aldermen of the city of Memphis. For reasons stated in the opinion of the court, the board of aldermen did not elect a city physician at the time specified by the charter, but an election of this official was had at a later meeting. Said election was upheld, and the court said:

" 'It is equally clear, we think that the failure to elect on the charter day even under the principles of the common law, as well as our own decisions and statutes, does not take away from the corporation, the right to hold an election afterwards, when the annual day of election, as in this case, has passed by without fraud or design. 2 Kent's Com., 295, Mar.; Nashville Bank v. Petway [22 Tenn. 522], 3 Humph. 522. See, also, Code of Tenn., Secs. 1481, 1365, 1378.'

"The general rule is to the same effect, and statutes fixing the time for holding an election by a municipal board are ordinarily construed as directory 'to the extent of permitting and authorizing an election or appointment at a latter day than that named in the law, where the body whose duty it is to elect or appoint on a day certain neglects to perform the duty and the obligation still remains.' 28 Cyc., 405. This principle has been lately recognized by this court in Conger v. Roy, 151 Tenn. 30, 267 S. W. 122, where a county clerk, holding over on account of a void election, was declared to hold only until the next biennial election, although the term of the county clerk is four years.

"Inasmuch, therefore, as the obligation still rests upon the quarterly county court of Lawrence county to elect a successor to the county superintendent of schools

elected at its January, 1923, term, that duty should be discharged at the first meeting of said body occurring after proper notices of this election have been given. Said election may be held at a regular meeting of the quarterly court or at a special meeting of the quarterly court properly called under section 5997, Thompson's-Shannon's Code. Walmsley v. Franklin County, 133 Tenn. 579, 182 S. W. 599.''

We therefore hold that the term to which complainant had been elected expired July 1, 1950. Until that time the Court could not elect his successor. At its July meeting therefore it was presented with its first opportunity for such election. The regular date in 1949 fixed by Section 2320b having been passed without fraud or design but by express provision of the Private Act applicable to Rhea County, it follows that it would have been proper for an election to have been made on the first day of the July term.

It is quite obvious, however, that no such election took place at that time because of the injunction proceedings. For that reason we find it unnecessary to pass on the question of the notice alleged to have been given by the ten members of the Court. If and when a successor to complainant is elected, if other than complainant, the question may then be presented as to the timeliness and method of notice.

Under the rulings in the cases of Merriman v. Norman, Mayse v. Biggs, Lane v. Farmer, supra, Mengle Box Company v. Lauderdale County, 144 Tenn. 266, 230 S. W. 963, and Barthell v. Zachman, 162 Tenn. 336, 36 S. W. (2d) 886, we are of the opinion that the bill should have been dismissed.

We are not unmindful of Section 10618, which provides that this Court shall not have jurisdiction

over cases involving the right to hold a public office. This is not a proceeding between two individuals claiming the right to hold office but is a proceeding wherein complainant seeks an injunction against the election of his successor. The right to hold public office is only incidentally involved in the determination of the question of his right to the injunction. For that reason we have assumed jurisdiction.

The Chancellor is affirmed at appellant's costs.

McAmis and Hale, JJ., concur.