R. F. TAYLOR et al. *v.* WM. A. WOOD, Adm'r.

COMPENSATION. *For services. Statute of limitation.* Where a party renders service in hope of a legacy in sole reliance upon testator's generosity, without any contract express or implied, no action will lie if no provision be made by will. But where from all the circumstances, it is manifest, that it was mutually understood that compensation should be made by will, and none is made, an action lies to recover the value of such services— but the statute of limitation being pleaded services can only be recovered for six years prior to death of testator.

FROM MADISON.

Appeal from the Chancery Court at Jackson. H. C. ANDERSON, Sp. Ch.

CAMPBELL & JACKSON, CARUTHERS & MALLORY, R. W. HAYNES, C. G. BOND, MUSE & BUFORD, and C. W. FRASER for Complainants.

J. L. H. TOMLIN and BULLOCK & HAYS for defendants.

DEADERICK, C. J., delivered the opinion of the Court.

The material and most important question in this case arises upon a claim set up by defendant for compensation for services rendered his intestate in her life time.

The question is made in the County Court of

Taylor *v.* Wood.

Madison County, in the progress of the settlement of the administrator's account.

Within two years and six months after Wood's appointment and qualification as administrator of the estate of Mrs. E. C. Martin, he as administrator upon her estate, upon notice by the County Court Clerk to the parties interested in the estate, filed his vouchers for disbursement, etc., and a formal account in favor of himself for 21 years service to intestate, as agent and superintendent of her business affairs, and for medical services rendered her family, at the rate of $500 per annum.

This claim was mainly contested by the distributees, and upon a reference to the Clerk for an inquiry and report, much testimony was taken. He reported to the Court the amount of receipts and disbursements, to be credited to and charged against the administrator, and showing the total assets of the estate to be about $40,000. No debts were reported as due from the estate, and the assets consisted chiefly of notes for money loaned. And the charge of the administrator for said services in the life time of intestate, and for services and fees and expenses incident to the administration of the estate, constituted all the charges upon the fund.

The litigation, however, between the administrator and distributees began in March, 1873, when the administrator filed his account for services, and has continued to the present time.

To the report of the Clerk, the administrator

filed four exceptions, and the distributees, thirty-five, nearly all of which were overruled, and a decree was entered and both parties appealed to the chancery side of the Common Law and Chancery Court of the County of Madison.

The exceptions sustained were allowances to counsel and for services by defendant for a period of about eight months, as administrator *pendente lite,* he having been appointed such pending a contest between himself and another for the appointment of a regular administrator.

The County Court allowed Dr. Wood $225 per annum, for 21 years, with interest from the death of Mrs. Martin in 1873.

Exceptions from 1 to 23, inclusive are, that the administrator is not charged, as he should be, with the several debts noted. But the report shows that the said claims are in the hands of the administrator, to be accounted for by him. Some of these are upon insolvent persons, and except those, the claims are in fact reported as being chargeable to the administrator.

The administrator makes his inventory and report on oath, and *prima facie* it is taken as true, but may be impeached. It is not shown that the parties reported by him as insolvent, were not so.

The credit of $2,182.11 is given because the administrator was charged with all the notes, good and bad, and the report shows that more than this amount of " desperate " debts were charged to him. So the $20,731.70 is not really a credit to

the administrator, but shows only that amount of the aggregate debt is uncollected.

Contestant's thirty-five exceptions are repeated with some variations, making in all seventy in number. As to those relating to the fees of counsel, by consent, they were remanded to the County Court, and need not be noticed, and as to the allowance for services *pendente lite*, the extra allowances excepted to should have been sustained beyond allowance made by Chancellor, as the sum allowed by him for services and expenses during that period is sufficient compensation under that head. A number of exceptions to small amounts paid by the administrator for which he exhibits vouchers, are taken, which are no doubt proper charges. But the exception No. 23, of the second series of thirty-five, to an allowance of $303.68 for commission and costs, incident to sale of R. H. Epperson's land, will be so far sustained as to allow the distributees, upon the remanding of the cause, to show that the credit is excessive or otherwise improper. So also as to the credits of $33.38, being commissions on sale of town lot of J. Y. Keith. The contestants may also have enquiry as to validity of charge for repairs of fence, and whether the $9.35 for taxes was paid as per voucher No. 39 of County Court record, and they, or some of them, ought personally to know whether the $1 was paid for registration of the deed to themselves, and they may have like reference as to this and the other small items named in exception

No. 26, p. 500, of County Court record, and as to matters excepted to by exception No. 27. The Clerk ought to have proved all these payments, and showed their necessity by calling the administrator before him and examining him. But unless there is some ground for believing the charges unauthorized it tends only to increase expense and trouble needlessly to take exceptions. And, if contestants desire a reference on these matters they may have it upon peril of payment of costs, if their exceptions are not sustained.

The material exception in the case is that one which denies that the administrator is entitled to any compensation for services rendered Mrs. Martin in her life time. It is not denied that such services were rendered, nor that they were of great value to Mrs. Martin. Indeed, the overwhelming weight of the evidence is that Dr. Wood, for more than twenty years, managed the business of Mrs. Martin, with fidelity, tact and success; that during most of this time he attended herself and family as a physician, and that her means greatly increased under his management.

These facts are shown by the evidence of their neighbors, and by the repeated declarations of Mrs. Martin, down to the time of her death. She was aunt to Dr. Wood, living some twelve miles distant from him, and for the purpose of having the benefit of his advice and assistance, being a widow without children, about twenty years before her death she removed to a farm, which she owned or

bought, within one mile of the residence of Dr. Wood.

As before stated, it is not controverted that Dr. Wood rendered Mrs. Martin valuable services in the management of her plantation and negroes, the sale of her crops; taking charge also of her surplus money and loaning it out upon good personal or real estate security, renewing and collecting notes, etc.

But it is insisted that these services were rendered gratuitously, and that Dr. Wood did not intend to charge, nor did Mrs. Martin expect or intend to pay for them. A great deal of testimony has been taken on this point, and while two witnesses say that some time during the term of his services he said he did not expect to receive anything for his services, and that he did not intend to charge anything for his services, the weight of evidence is, that he always expected to receive and intended to claim compensation. On several occasions Mrs. Martin, in his presence, declared that Dr. Wood was devoting a great deal of his time to her business; that he had managed it most faithfully and successfully, and that she would compensate him for it, adding on some occasions, at her death. Often to others, in the absence of Dr. Wood, she made similar declarations, saying she could not do without his services, and she would pay him well for them. So that we are of opinion that there was an understanding between the parties that Dr. Wood was to be compensated for his services.

Probably Mrs. Martin intended to provide this compensation by her will, but dying suddenly she failed to carry out her purpose. When a party renders service in hope of a legacy, in sole reliance upon testator's generosity, without any contract express or implied, no action will lie, if no provision be made by will. But where, from all the circumstances, it is manifest that it was mutually understood that compensation should be made by will, and none is made, an action lies to recover the value of such services: 13 Wend., 460, 9 Grat., 708.

We think the circumstances of this case, as well as the repeated declarations of the parties, show that both Dr. Wood and Mrs. Martin understood that compensation was to be made for the services rendered by Wood, at the death of Mrs. Martin.

Although she had often spoken of her intention to reward Dr. Wood, Mrs. Martin, although abundantly able to do so, never made any offer of present compensation, but always spoke of it as to be made in the future, and sometimes, as at her death.

But it is said that Dr. Wood in loaning her money exacted from the borrowers, not only the highest rates of legal interest for Mrs. Martin, but also stipulated for an annual bonus for himself of 3 to 5 per cent., to be paid by the borrower as compensation for his trouble in getting up the money and taking deeds of trust, investigating

titles to the lands upon which trust deeds were taken, etc. This, it is said, was sufficient pay for his services in respect to the management and loan of the money, and that if allowed compensation he should account for the sums thus received. Several instances are shown in which he did charge and receive such compensation. But, although he said it was his custom to charge in all such cases, several cases are shown in which he did not make such charge.

The payment was always made by the borrower, Mrs. Martin got all the interest she was entitled to, and her interest was always protected. And there is evidence that she knew of this practice of Dr. Wood and made no objection to it, and her ratification of his act may be thus presumed. We are of opinion, therefore, that the administrator cannot be held liable for any sum thus received in discharge of a debt due him from the estate. The evidence shows that Dr. Wood's services were worth $450 per annum, and the Chancellor allowed this sum for a period of seven years. But the contestants have relied upon, and pleaded the statute of limitations two and a half and six years, and we are of opinion that the plea is a good defense against the recovery for more than six years' service. For this term of six years defendant is entitled to compensation with interest at the end of each year to the present time exclusive of the time from intestate's death until six months after the grant of regular administration on her estate. De-

fendant will be entitled also to 5 per cent. commissions on the amount of the fund passing through his hand, and in this will be computed the debts secured on mortgages or deeds of trust, but his exception for insufficiency of five per cent. allowance, in this particular, will be overruled. And except as modified by this opinion the exceptions to report will be overruled, and the Chancellor's decree will be affirmed, and the cause will be remanded to the Chancery Court for such further orders and decrees as may be necessary to a final adjustment of the rights and equities of the parties.

The costs of this Court will be paid by the administrator out of funds of the estate in his hands, and the costs below will be paid as the Chancellor may direct.