Mrs. Jean Lebo, Appellant,

*v.*

Mrs. Kathleen Barton Green, Individually and as Executrix of the Last Will and Testament of H. A. Green, Deceased.

426 S.W.2d 489.

(*Jackson,* April Term, 1967.)

Opinion filed February 26, 1968.

Petition for Rehearing Denied April 15, 1968.

302

ASHLEY, MALONE, ASHLEY & LAWSON, Dyersburg, for appellant.

CLARK P. Moss, Dyersburg, for appellee.

Mr. Justice Humphreys delivered the opinion of the Court.

Mrs. Jean Lebo sued Mrs. Kathleen Barton Green, individually and as executrix of the will of H. A. Green, deceased. Executrix demurred; her demurrer was sustained, and Mrs. Lebo has appealed.

Mrs. Lebo's original and amended bill alleged in substance that her mother died suddenly in January, 1922, when she was three years of age; that her father entered into an agreement with H. A. Green and his wife, Mrs. Aleene Nichols Green, for the adoption of Mrs. Lebo

upon the agreement of Mr. and Mrs. Green that in return for the consent to the adoption, H. A. Green would take out more life insurance for Mrs. Lebo, and at the death of H. A. Green all his property would go to her. That pursuant to the agreement Arch B. Moore consented and agreed to the adoption which was effectuated by decree of the County Court of Dyer County on January 30, 1922. That thereafter Mrs. Lebo lived with her adoptive parents offering them the affection, companionship and services of a natural child. That she so lived until her marriage to William Lebo, after one year of college. That the following year, about three weeks after the birth of Mrs. Lebo's child at the Green home in Dyersburg, to which she had returned, H. A. Green and Mrs. Aleene Green separated with Mrs. Lebo remaining with Mrs. Green until she returned to her own home in New Orleans. That following the separation of her adoptive parents Mrs. Lebo returned occasionally to Dyersburg.

That in approximately the year 1934, Mrs. Lebo's natural father, Arch B. Moore, drowned, and provided only for his widow and son, through life insurance, providing nothing for Mrs. Lebo who was at that time in the eleventh grade in the Dyersburg Public School. That she expected nothing from her natural father's estate as she had "always been advised that she was the legal child of H. A. Green and that at the time of her adoption the said H. A. Green entered into an agreement with the said Arch B. Moore that, as a consideration for the surrender of her adoption", Green had agreed to provide her an inheritance through life insurance or other property owned at his death.

That subsequent to the divorce, H. A. Green married defendant Kathleen Barton Green; that Green died

testate in Dyer County on October 25, 1965, the owner of a valuable estate; that he devised and bequeathed almost his entire estate to his wife, bequeathing Mrs. Lebo only one dollar. That Green had not otherwise complied with his agreement to provide an inheritance for appellent; that through mistake, inadvertence or fraud, the written contract failed to express the true and accurate agreement between Moore and Green as regards the provisions Green would make for his adoptive daughter by life insurance and by leaving all his property to her; that through mistake, inadvertence or fraud, the written contract did not embody this agreement to take out more life insurance for complainant, and for Green to leave her all his property at his death. But that Moore executed the agreement believing it contained these terms of their prior oral agreement. That she and her natural father fully performed their part of the agreement but that Green breached his contract by failing to devise and bequeath his estate to her.

That she was entitled to have the contract reformed, and as reformed, to have it specifically enforced, or, to be awarded damages for its breach; or, to have a decree for compensation for services rendered on an implied contract between herself and Green.

The prayers were that the contract of adoption be reformed so as to express the real contract between the parties as alleged in the original and amended bill; that the contract be specifically performed, or complainant be awarded damages for its breach; that defendant be estopped from denying the terms of the contract as reformed or from relying on the statute of frauds as a defense thereto; or, that complainant be awarded reasonable compensation for services rendered under an im-

plied contract to perform such services; and for general relief.

Mrs. Kathleen Barton Green demurred to the original and amended bill on the following grounds:

"I. The bill shows on its face that the alleged contract is in violation of the statutes of fraud as contained in Section 23-201, Tennessee Code Annotated.

II. Because the contract filed as exhibit three to the original bill is plain, clear and unambiguous and therefore cannot be altered, reformed, changed or modified by oral proof.

III. Because the bill and amended bill shows on its face that there was no written contract between the parties by virtue of which the complainant was to be the beneficiary of the defendant's will or to be left any life insurance.

IV. Because the bill shows on its face that exhibit three contained the whole agreement between the parties.

V. Because the alleged contract, if valid, would defeat the marital rights of the defendant, Mrs. Kathleen Barton Green, in both the real and personal property of the defendant and would, therefore, be against public policy and unenforceable.

VI. Because any contract involving land must be in writing.

VII. Because the bill shows on its face that the complainant is not entitled to specific performance of said alleged oral contract.

VIII. Because if said written contract could be altered by oral proof the bill shows on its face that the

enforcement of the same would show an undue hardship on the defendant.

IX. Because there is no equity on the face of the bill of the amended bill.

X. Because the bill shows on its face that there was no contract for payment for any services rendered, if any, by complainant and such relief would be contrary to the provisions of the adoptive contract.

XI. Because the bill shows on its face that complainant was supported by the defendant while in his home and as a child or adopted child of the defendant's husband, H. A. Green, the said H. A. Green, was entitled to her services as a member of the family.

XII. Because the bill shows on its face that complainant is not entitled to any damages for any reason.

XIII. Because the defendant is not liable for the specific relief prayed for or any part thereof.''

Tr. pp. 26-27

Without comment on any one of the grounds of the demurrer, Judge Robert D. Jones sustained it and a decree was entered dismissing the amended original bill.

Mrs. Lebo has appealed, and has assigned errors, including the following:

''The trial court erred in sustaining the appellee's demurrer and each ground thereof and thereby holding that complainant's bill failed to state a cause of action sufficient to sustain a decree for the relief prayed for.''

Following this assignment of error, error is assigned with respect to each ground of the demurrer as though that ground was the basis of the final decree.

Having concluded that the ground of dismissal of Mrs. Lebo's suit which is made the basis of the first assignment of error required a dismissal of her suit, we shall direct our discussion to the correctness of the Chancellor's action.

In order to discuss the equitable principles which in our opinion required the dismissal of the original bill as amended, it is necessary to mention certain salient facts appearing in the bill and its exhibits. The first is, that the agreement of adoption said to be the product of fraud, inadvertence of accident, or mistake, was made in January, 1922, and approved by N. L. Scobey, County Judge of Dyer County. The agreement was filed in the Dyer County Court with the petition for adoption, which was decreed on January 30, 1922, following which the contract was copied in full into the Dyer County Court minutes in Minute Book T, pages 481-482, together with the petition and decree. In 1934, Arch B. Moore, complainant's natural father and the party who allegedly obtained the promises omitted from the contract, met his death by drowning. On October 29, 1965, H. A. Green, the last surviving party to the contract, other than the third party beneficiary, Mrs. Lebo, died. From the time of Mrs. Lebo's adoption as a three year old child until her marriage, sometime after completing one year in college, she lived with the Greens in Dyer County. And the next year after her marriage, when she expected her first child, she returned to the Green home in Dyersburg to have her baby; and stayed on at the home with Mrs. Green for some time, following the separation of the

Greens about three weeks after the birth of her child. After that she made occasional visits to Dyersburg. There is no allegation that on the return visits to Dyersburg Mrs. Lebo visited with H. A. Green and his second wife, although the bill does allege that nothing occurred between H. A. Green and Mrs. Lebo to alienate them from each other.

The equitable basis for the original bill as amended is in its entirety as follows:

"That the written contract between Arch B. Moore and H. A. (Arthur) Green, made Exhibit (3) to the original bill, through mistake, inadvertence or fraud, did not embody the actual agreement theretofore made as aforesaid, but that said provision and the intention of the parties relating to H. A. Green's agreement to take out more life insurance for complainant and to leave all of his property to complainant at his death was not fully and truly expressed therein; that the said Arch B. Moore executed said agreement believing that the terms of their prior oral agreement, including the above provisions had been fully and correctly expressed and embodied in said written agreement."

Tr. 23-24

In the Court's opinion the Chancellor-Judge had no alternative to the dismissal of the bill. First, on the general ground recognized by the first assignment of error, as the facts alleged convicted Mrs. Lebo of the grossest sort of prejudicial laches, which was in no way excused by any explanatory allegations; and second because the equitable grounds of relief; fraud, inadvertence

or mistake, are charged in such general, unspecified terms as to afford no grounds of relief.

Gibson's Suits in Chancery, First Edition 1891, teaches us, consistent with the writings of John Norton Pomeroy, LLD., that there are certain maxims which lie at the foundation of universal justice. That these maxims are in the strictest sense the beginnings or principles out of which has developed the entire system of equity jurisprudence. One of these maxims is, ''Equity aids the vigilant, not those who sleep upon their rights''. Of this maxim, Pomeroy says:

> ''The principle embodied in this maxim, the original form of which it, Vigilantibus non dormientibus aequitas subvenit, *operates throughout the entire remedial portion of equity jurisprudence, but rather as furnishing a most important rule controlling and restraining the courts in the administration of all kinds of reliefs,* than as being the source of any particular and distinctive doctrines of the jurisprudence.'' (Emphasis supplied) 2 Pomeroy's Equity Jurisprudence, p. 169, sec. 418, 5th Ed.)

Concerning the application of this maxim through the doctrine of laches, Gibson says:

> ''The neglect of a person to make complaint, or bring suit in due season, he being sui juris and knowing the facts, *or having the means of knowledge,* is called laches; and where there has been gross laches in prosecuting rights, or long and unreasonable acquiescence in adverse rights, Courts of Equity refuse to interfere, they acting either by analogy to the statutes of limitations, or upon their own inherent doctrine of discouraging antiquated demands. The Court realizes the

difficulty of doing entire justice, when the original transaction has become obscured by time and the evidence lost,''. (Emphasis supplied) 1 Gibson's Suits in Chancery, pp. 101-102, Sec. 81 (5th Ed.)

Consistent with Pomeroy's discussion of this maxim as operating as a most important rule controlling and restraining courts in the administration of equitable relief, and consistent with our quotation from Gibson, we are compelled to hold the facts as alleged in the bill as amended show both Mrs. Lebo and her father, Arch B. Moore, through whom she has to trace her claim to H. A. Green, of the grossest sort of prejudicial laches and lack of vigilance—diligence. From the time of the making of the contract, and its incorporation into the adoption decree on the minutes of the County Court of Dyer County, in January 1922, until Mr. Moore's death in 1934, twelve years, the contract was a matter of constructive notice to Mr. Moore, this being the effect of court decrees to which one is a party as was Mr. Moore to this adoption proceeding; he being the consenting parent to the adoption. And, although Mrs. Lebo's age is not directly alleged in the original bill, we know from the allegation made with respect to her that for at least twenty-five years, while Mrs. Lebo has been married, and making her home in another state, and her adoptive father, H. A. Green, separated from the wife with whom he was living when Mrs. Lebo was adopted, and married to another woman, and Mrs. Lebo has been paying visits to Dyersburg, nothing was done, or so far as appears from the bill, even said, about the contract on which the decree of adoption is based. While, of course, the contents of the decree would not be supposed to be known to Mrs. Lebo as an infant and child, we think when she

saw the turn her adoptive father's life had taken in the separation from the first wife and his marriage to the second, and the evident loss of any familial relationship with him, that if Mrs. Lebo expected to rely on the information she now makes the predicate of her bill, she was obligated in good conscience—which is equity—and by that vigilance and diligence equity demands, to bring her claim forward and have it tried out then, instead of waiting until after Mr. Green's death; and the claim had grown so stale with age as not be the fit subject of equitable concern and relief.

So on this ground, lack of vigilance,—lack of diligence, and gross prejudicial laches, we think the Chancery Court of Dyer County was without equitable jurisdiction to grant any relief under the amended bill.

Concerning what is necessary to charge actionable fraud Gibson says the following:

"Fraud is generally established by proof of circumstances, and these circumstances are generally known to the complainant; so the Court requires the complainant to set out these circumstances in his bill, not only that the Court may know on what grounds the charge of fraud is based, but, also, that the defendant may know the precise facts he will have to meet in framing his answer, and making his proof. A general charge of fraud is nugatory, for fraud is not so much a fact as a conclusion deduced from facts; and a bill charging fraud in general terms as the ground of relief and setting forth no particulars showing the fraud, will be dismissed on demurrer." Gibson's Suits in Chancery, Vol. 1, sec. 149, p. 186 (5th Ed.)

It is only necessary to read the bill to see that it in no way meets this rule.

Quoting from Gibson again:

"Accident, as remedial in Equity, may be defined to be an unforeseen and injurious occurrence, not attributable to mistake, negligence or misconduct." Gibson's Suits in Chancery, Vol. 2, sec. 985, p. 220, (5th Ed.)

With respect to mistake as remedial in equity, it is defined as being:

"A mistake may be defined to be an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition, it must be mutual or fraudulent." Gibson's Suits in Chancery, Vol. 2, sec. 986, p. 221, (5th Ed.)

There are no facts alleged in the bill to afford complainant any relief on the ground of mistake as here defined.

With respect to bills to reform instruments such as a contract, because of mistake or accident, Gibson says:

"Frame and Form of Bills in Cases Arising from Accidents, and Mistakes.—The frames and forms of bills to set up instruments lost, destroyed or mutilated by accident, and of bills to reform instruments because of mistake, will be found in the Articles treating of such bills, and reference is made thereto. Great particularity of details is required in framing such bills; the circumstances attending, or causing the accident or mistake complained of should be fully set forth, and it

should be shown that complainant was free from any fault in the matter, and in no way responsible for the accident or mistake.

The bill should be filed promptly after the happening of the accident or the discovery of the mistake, or the delay should be accounted for.'' Gibson's Suits in Chancery, sec. 987, p. 222 (5th Ed.)

Again, with respect to the reformation of written instruments Gibson says:

''Suits for the Reformation of Written Instruments.

—When an agreement is made and reduced to writing, but through mistake, inadvertence or fraud, the writing fails to express correctly the contract really made, the Court of Chancery upon a bill setting up the facts and not mere conclusions by the pleader will reform the instrument in a clear case so as to make it conform to the real intention of the parties * * *'' Gibson's Suits in Chancery, sec. 991, p. 231 (5th Ed.)

A careful reading of the bill discloses there are no facts or circumstances alleged upon which equitable relief could be granted on the grounds of accident or inadvertence, mistake, or fraud. While the rules with respect to pleading requirements which we have quoted may flex and give where facts are alleged which explain the necessity for this and justify it out of equity's concern to put things right, there are simply no such allegations in the amended bill; and we suspect their absence is not due to diligent, competent counsel, but simply because none are available to be pleaded.

In this state of affairs we must and do agree with the Chancellor-Judge that the amended bill affords no equitable basis for a reformation of the contract.

■ The phase of Mrs. Lebo's bill seeking, in the alternative, compensation for services rendered her adoptive father, is in the identical plight of the rest of the bill. There are no allegations of any services performed of any valuable nature.

■ Moreover, *Goodloe v. Goodloe,* 116 Tenn. 252, 92 S.W. 767, 6 L.R.A.,N.S., 703 (1905), and *Taylor v. Woods,* 72 Tenn. 504 (1880), are not applicable to the facts of this case. Any services Mrs. Lebo may have rendered as a girl in the home with Mr. and Mrs. Green prior to her marriage could only be recovered for upon a contract and not upon quantum meruit. *Cotten v. Roberts' Estate,* 47 Tenn.App. 277, 337 S.W.2d 776 (1960); *Shugart v. Shugart,* 111 Tenn. 179, 76 S.W. 821 (1903); *Gorrell v. Taylor,* 107 Tenn. 568, 64 S.W. 888 (1901). *Goodloe v. Goodloe,* supra, is not applicable because the case there involved is altogether different from this one. There, the plaintiff was prevented from enforcing specific performance of a parole contract to devise certain land to him in consideration of services rendered deceased, because of the statute of frauds. So it was held he was entitled to recover the reasonable value of his services on a quantum meruit. Here, by virtue of our previous ruling on the total inadequacy of the bill as a basis for equitable relief in the nature of the reformation of a written contract on the grounds of fraud, accident or mistake, there remains nothing but a valid contract of adoption under which Mrs. Lebo owed her adoptive father, Green, any services she may have rendered him. *Maguinay v. Saudek,* 37 Tenn. 146 (1857).

The assignments of error are overruled and the judgment of the lower court is affirmed.

316

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

## Opinion on Petition to Rehear.

A petition to rehear has been filed making the points that this Court should not have affirmed the Chancellor's dismissal of the suit on grounds of lack of vigilance, lack of diligence, and gross prejudicial laches, and on the second ground that no facts or circumstances were alleged upon which equitable relief could be granted on grounds of accident or inadvertence, mistake or fraud; as these two grounds of dismissal were not specifically invoked in the demurrer.

We think it is sufficient to reply that the opinion was written as it was, and the grounds of dismissal applied, in response to one of Mrs. Lebo's assignments of error as follows:

"The trial court erred in sustaining the appellee's demurrer and each ground thereof and thereby holding that complainant's bill failed to state a cause of action sufficient to sustain a decree for the relief prayed for."

■ This summarization of the appellant's own interpretation of the effect of appellee's demurrer (especially in view of the ground of the demurrer, unobjected to by Mrs. Lebo, relying on the absence of equity on the face of the amended bill), placed squarely before this Court the question of the sufficiency of the bill to afford any equitable relief. So, we dealt with the assignment and answered the question.

■ Moreover, it must be borne in mind that on appeal to this Court, after a complaining party has had the ample opportunity afforded by our law to amend plead-

ings so as to make the best possible case, this Court is doubly entitled to apply the rule recognized in *Mayse v. Biggs,* 40 Tenn. 36; *Earles v. Earles,* 40 Tenn. 366; *Parks v. Jones,* 42 Tenn. 172, 173; *Merriman v. Norman,* 56 Tenn. 269; *Quinn v. Leake,* 1 Tenn. Ch. 67; *Randall v. Payne,* 1 Tenn. Ch. 137; *Lynn v. Polk,* 76 Tenn. 121; and *Lane v. Farmer,* 79 Tenn. 568, to the effect that a bill totally wanting in equity upon its face, or which shows that a complainant is not entitled to any relief, may be dismissed upon motion of defendant, or by the Chancellor of his own accord, when coming regularly before him for adjudication.

In *Martin v. Senators, Inc., et al.* 220 Tenn. 465, 418 S.W.2d 660; concerning a similar case, this Court quoted with approval from 5 Am.Jur.2d, Appeal in Error, sec. 723, as follows:

"The scope of appellate review is generally limited to matters complained of or points raised in the appeal, although the appellate court may sometimes take up a point of law on its own motion, and may sustain the decision appealed from by any argument for which there is a basis in the record."

The objection taken in the petition to rehear to the statement in the opinion concerning the evident breakdown of familial relationship between Mrs. Lebo and Mr. Green was, we think, a fair inference from the facts alleged, most of which were recited in the opinion. In any event, this inference was by no means a controlling predicate for the opinion, so that if it is a conclusion about which there could be disagreement, the opinion would still have to stand as written.

In response to the petition to rehear we have considered our opinion in the light of the complaints against it, and are of opinion the petition to rehear must be denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.