IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS AUGUST 12, 2011

TRACEY CHANDLER and KELLY WILSON v. CHARLESTON
VOLUNTEER FIRE DEPARTMENT

Direct Appeal from the Circuit Court for Tipton County
No. 6768     Joseph H. Walker, Judge

No. W2011-00322-COA-R3-CV - Filed September 13, 2011

The trial court reformed a lease agreement, finding certain terms had been erroneously transposed. Appellants contend the reformation was error. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

J. Barney Witherspoon, IV, Covington, Tennessee, for the appellant, Tracey Chandler and Kelly Wilson

Taylor Forrester, Covington, Tennessee, for the appellee, Charleston Volunteer Fire Department

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On August 24, 1990, Imogene McIntyre ("Ms. McIntyre") and her daughter, Jean McIntyre Wilson ("Ms. Wilson") entered into a lease agreement with Appellee, Charleston Volunteer Fire Department. The lease involved an undeveloped tract of land which was to be used "for the purpose of the use of a volunteer fire department for the Charleston Community."

The lease provided, in relevant part, as follows:

THIS AGREEMENT made and entered into the 24 day of Aug[ust], 1990, by and between Imogene McIntyre and Jean McIntyre Wilson, (hereinafter called the "Lessors") and Charleston Volunteer Fire Department (hereinafter called "Lessee").

In consideration of one dollar and other good and valuable consideration including the covenants and agreements herein addressed and of the faithful performance by the Lessee of all such covenants and agreements, the Lessors do hereby lease to the Lessee and the Lessee does hereby rent and take a section of land described as follows:

[description omitted]

1. Purpose. The Lessee represents the premises will be used and are being leased for the purpose of the use of a volunteer fire department for the Charleston Community.

2. Term of Lease. The Lease shall be for 20 years commencing on the date of the signing of the lease. If tenant remains in possession of leased property after the expiration of either the original term of this lease or any extended term the Lessor shall have an option to exercise said lease for an additional 20 year period.

3. Rent. The Lessors shall pay to the Lessee no rent for the use of the above described premises throughout the term of this lease.

. . . .

7. <u>Default</u>. The Lessors may give the Lessee thirty days notice of intention to terminate this lease in any of the following circumstances:

(a) If the Lessee shall be in default in performance of any covenant of this lease and if such default is not cured within ten (10) days after written notice thereof given by the Lessors.

(b) If the leased property becomes vacant or deserted for a period of fourteen days.

(c) If the lease shall be assigned or if the property is sub-let without the express[] written permission of the Lessors.

If the Lessors give the notice required in this provision at the expiration of such period this lease shall terminate as completely as if that were the date herein definitely fixed for the expiration of the term of the lease, and the Lessee shall then surrender the leased property to the Lessors. If this lease shall so terminate, it shall be lawful for the Lessors at their option, to re-enter the leased property by an unlawful detainer action or by any other means, including force, and to remove the Lessee therefrom without being liable for any damages therefor. The Lessee shall remain liable for all its obligations under this lease, despite the Lessors['] re-entry, and the Lessors may re-rent or use the leased property as agent for the Lessee if the landlord so elects. Time is of the essence of this lease with respect to the performance by the Lessee of its obligations hereunder.

. . . .

11. The Lessee shall not assign, mortgage, or encumber this lease, nor sublet or permit the leased property or any part thereof to be used by others, without the prior written consent of the Lessors in each instance.

12. The Lessee shall, during the term of this lease and any renewal or extension thereof, at its sole expense, keep the property and its improvements in as good order and repair as it is at the date of the commencement of this lease, and shall be also responsible for all repairs and maintenance of the property. Maintenance and upkeep of the leased premises shall be Lessee's responsibility during the term of the lease.

The lease agreement was executed by Ms. McIntyre, Ms. Wilson and Jimmy Latham,

President of the Charleston Volunteer Fire Department Board of Directors.

Following the expiration of the original twenty-year lease period, the current property owners, Mr. Kelly Wilson and Ms. Tracey Chandler ("Plaintiffs" or "Appellants"),[1] filed a writ of possession in the Tipton County General Sessions Court seeking to evict the Charleston Volunteer Fire Department ("Defendant" , "Appellee" or "Fire Department"). Plaintiffs did not wish to extend the lease, and they argued that pursuant to the lease, they, rather than the Defendant, possessed the lease extension option. However, Defendant argued that the lease provision affording Plaintiffs the extension option was a scrivener's error, and that the parties had intended for Defendant to hold this option.

A trial was held in the general sessions court on October 6, 2010, and the detainer warrant was dismissed. Plaintiffs then appealed to the Tipton County Circuit Court and a bench trial was held on December 3, 2010. The circuit court entered an order on December 6, 2010, dismissing the writ of possession. Specifically, the circuit court found that the lease provision allowing Plaintiffs to exercise the lease extension option was a scrivener's error, and it reformed the lease to give the Fire Department this option. It further found that the Fire Department did not default on the lease such that Plaintiffs could terminate the lease upon written notice. Plaintiffs timely appealed.

## II.  ISSUES PRESENTED

Appellants presents the following issues, slightly restated, for review:

1.      Whether the plain language of the contract in paragraph two governs;

2.      Whether the lease expired upon giving notice of non-renewal under paragraph seven; and

3.      Whether any additional lease term under the contract should be for $1.00 rent.

For the following reasons, we affirm the decision of the circuit court.

---

[1]Apparently, when Ms. McIntyre died in November of 2000, Ms. Wilson became the sole owner of the property. Ms. Wilson executed a quitclaim deed to her daughter, Tracey Chandler, in May 2004. Ms. Chandler then executed a quitclaim deed to her brother, Kelly Wilson, in June 2009. In May 2010, Kelly Wilson executed a quitclaim deed to himself and Ms. Chandler.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d) (2010)**; *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). We review a trial court's conclusions of law under a de novo standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. Lease Extension Option

The lease at issue established a twenty-year lease period, from August 1990 to August 2010, between the Lessors Ms. McIntyre and Ms. Wilson and the Lessee Fire Department. The agreement provided that following the expiration of this original term, or any extended term, "the *Lessor* shall have an option to exercise said lease for an additional 20 year period." (emphasis added). However, the trial court found that the use of the term "Lessor" was a scrivener's error and it reformed the lease to afford the Lessee Fire Department, the extension option. On appeal, Plaintiffs argue that the trial court erred in reforming the lease, contending that the plain language of the agreement should control.

Generally, "courts must interpret contracts as they are written, and are not at liberty to make a new contract for parties who have spoken for themselves[.]" *Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006) (citing *Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955); *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)) (internal citations omitted). "Accordingly, the courts do not concern themselves with the wisdom or folly of a contract, and will not relieve parties from contractual obligations simply because they later prove to be burdensome or unwise[.]" *Id.* (citing *Atkins v.*

*Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn. Ct. App. 1991); *Ballard v. N. Am. Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983); *Carrington v. W.A. Soefker & Son, Inc.*, 624 S.W.2d 894, 897 (Tenn. Ct. App. 1981)) (footnote and internal citations omitted). "Nevertheless, the law's strong policy favoring the enforcement of contracts as written must occasionally give way." *Id.* "[I]t is well settled that the courts have the power to alter the terms of a written contract where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain." *Id.* (citing *Alexander v. Shapard*, 240 S.W. 287, 291-94 (Tenn. 1922); *Cromwell v. Winchester*, 39 Tenn. (2 Head) 389, 390-91 (1859)).

Pursuant to the equitable remedy of reformation, a court may alter the provisions of a written agreement "to make the contract 'conform to the real intention of the parties.'" *Id.* at 287 (quoting *Lebo v. Green*, 426 S.W.2d 489, 494 (Tenn. 1968)). Reformation is "'driven by a respect for the parties' intent and gives effect to the terms mutually agreed upon by the parties.'" *Id.* (quoting 27 Williston on Contracts § 70:2, at 210). However, "[b]ecause the law strongly favors the validity of written instruments, a person seeking to reform a written contract must do more than prove a mistake by a preponderance of the evidence." *Id.* Rather, the reformation-seeking party must prove the mistake by clear and convincing evidence. *Id.* (citing *Hazlett v. Bryant*, 241 S.W.2d 121, 125-26 (Tenn. 1951); *Tenn. Hoop Co. v. Templeton*, 270 S.W. 73, 75 (Tenn. 1925); *Sawyer v. Sawyer*, 61 S.W. 1022, 1023 (Tenn. 1901); *Bailey v. Bailey*, 27 Tenn. (8 Hum.) 230, 233 (1847); Restatement (Second) of Contracts § 155 cmt. *c*, at 410). (footnote omitted).

One type of mistake is "mistake in the expression, or integration, of the agreement." *Id.* (citing *Jones v. Jones*, 266 S.W. 119, 121 (Tenn. 1924); *Alexander*, 240 S.W. at 291; Restatement (Second) of Contracts ch. 6 introductory note, at 379, 381, § 155 & cmt. *a*, at 406-07). (footnote omitted). A mistake in expression may be found, and the written contract adjusted to express the parties' true agreement, where one or both parties "erroneously believe that the contract embodies the agreement that both parties intended it to express." *Id.* (citations omitted).

> The party seeking a reformation must prove, by clear and convincing evidence that:
> (1) the parties reached a prior agreement regarding some aspect of the bargain;
> (2) they intended the prior agreement to be included in the written contract;
> (3) the written contract materially differs from the prior agreement; and
> (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation.

*Id.* at 288. Once these elements are established, "any discrepancy between the parties' prior agreement and their written contract is presumed to be the result of a mutual mistake[.]" *Id.*

(citing *Alexander*, 240 S.W. at 292-93).

At trial, the Fire Department presented proof regarding the lease execution. Prior to 1990, the Fire Department operated out of a barn and conducted meetings at a church. In 1990, Fire Department member Ms. McIntyre donated the vacant property at issue for the construction of a fire station. Mr. Latham met with Ms. McIntyre and Ms. Wilson; however, he claimed that Ms. Wilson never discussed the lease terms, she never raised any concerns or wishes, nor did she ask any questions. According to Mr. Latham, who is no longer affiliated with the Fire Department, he and Ms. McIntyre agreed that the Fire Department could opt to renew the lease following its expiration in 2010. He stated that prior to signing the lease, he looked at it but he "couldn't read it after a lawyer wrote it. . . . [and that his] education would not let [him] catch [a mistake]."

Similarly, Fire Department Treasurer Michael Wallace testified that, based upon his discussions with Ms. McIntyre, he believed the Fire Department held the option to renew the lease following its expiration. He further explained that since entering into the lease, the Fire Department had spent between $70,000 and $80,000 improving the property, including the construction of a non-portable building and a parking lot. He stated that Plaintiffs incur no expenses with regard to the property, as the Fire Department "covers every expense[,]" including taxes and maintenance.

As additional support for its argument that the terms "Lessors" and "Lessee" were erroneously transposed in paragraph two, the Fire Department points out that such terms were indisputedly erroneously transposed in paragraph three, which states that "The Lessors shall pay to the Lessee no rent for the use of the above described premises throughout the terms of this lease." Furthermore, the Fire Department emphasizes the lease's use of plural and singular forms. With the exception of paragraph two, the lease refers to Ms. McIntyre and Ms. Wilson as the "Lessors" and to the Fire Department as the "Lessee." However, paragraph two gives the "Lessor" the option to extend the lease. The Fire Department contends that the use of the singular "Lessor" indicates an intent to refer to the single-party, the Fire Department.[2]

Before the circuit court, Ms. Wilson testified that when she signed the lease agreement, she believed the decision whether or not to renew the lease at the expiration of the original lease term was hers. She further claimed that she had discussed the drafting of the lease during two meetings with Fire Department Board of Directors President Jimmy

[2]Interestingly, Defendant notes that "Appellants have offered no evidence or even argument of why the Lessors of a $1.00 lease of property would want, need or require the need or ability to require the Lessee to be bound to a lease renewal of essentially a free parcel of land."

Latham. However, at the general sessions court trial she agreed that she had entered into the lease "[b]ecause [her] mother wanted [her] to[,]" and that she was "just presented th[e] contract and signed it" without negotiating or discussing its execution with any members of the Fire Department. In fact, she stated that she "didn't even know who the board of directors was."

Plaintiffs argue that "because the construction and intent of at least one of the signatories to the contract was that [the lease extension] provision be enforced as written[,]" reformation was improper. However, as the middle section of this Court has noted, "[r]eformation is not automatically barred simply because one of the parties denies that there was an antecedent agreement or claims that the mistake was not mutual." *Id.* (citing 27 Williston on Contracts §§ 70:13, at 231, 70:21, at 258-59); *see also* 27 Williston on Contracts § 70:93, at 495 ("To reform a contract based on mistake, a plaintiff must establish that the contract was executed under mutual mistake or a unilateral mistake induced by the defendant's fraudulent misrepresentation. However, where there is no mistake about the agreement and the only mistake is in the reduction of the agreement to writing, such mistake of the scrivener or of either party, no matter how it occurred, may be corrected.").

Plaintiffs further contend that the language of paragraph seven supports their argument they control the lease extension option. Again, paragraph seven provides as follows:

> 7. <u>Default</u>. The Lessors may give the Lessee thirty days notice of intention to terminate this lease in any of the following circumstances:
>
> (a) If the Lessee shall be in default in performance of any covenant of this lease and if such default is not cured within ten (10) days after written notice thereof given by the Lessors.
>
> (b) If the leased property becomes vacant or deserted for a period of fourteen days.
>
> (c) If the lease shall be assigned or if the property is sub-let without the express[] written permission of the Lessors.
>
> **If the Lessors give the notice required in this provision at the expiration of such period** this lease shall terminate as completely as if that were the date herein definitely fixed for the expiration of the term of the lease, and the Lessee shall then surrender the leased property to the Lessors. If this lease shall so terminate, it shall be lawful for the Lessors at their option, to re-

enter the leased property by an unlawful detainer action of by any other means, including force, and to remove the Lessee therefrom without being liable for any damages therefor. The Lessee shall remain liable for all its obligations under this lease, despite the Lessors['] re-entry, and the Lessors may re-rent or use the leased property as agent for the Lessee if the landlord so elects. Time is of the essence of this lease with respect to the performance by the Lessee of its obligations hereunder.

(emphasis added). Plaintiffs maintain that this provision references their ability to determine, at the end of their lease, whether the lease will be extended. We disagree. This provision simply provides for lease termination at the end of the notice period, where a defaulting circumstance is present and remains uncured.

We find the above-cited evidence demonstrates, at a minimum, an agreement between the Fire Department and Ms. McIntyre to afford the Fire Department an option to extend the lease for an additional twenty-year period. Obviously, the lease, as written, differs materially from this agreement; however, the Fire Department has shown that this variation was the result of a scrivener's error and Mr. Latham's difficulties in understanding the document, rather than gross negligence on its part. *See Sikora*, 212 S.W.3d at 290 ("If inattention were enough to defeat a claim for reformation based on mistake in expression, the remedy would almost never be available to correct typographical mistakes and scriveners errors, because parties have a duty to read the written contracts they enter into and are ordinarily charged with knowledge of their contents regardless of whether they have actually read them. . . . A party's failure to catch a drafting error when reading over a written contract does not normally rise to the level of 'gross negligence' that will bar reformation.") (footnote omitted). As such, the Fire Department has successfully established a mistake in expression, and therefore, we find that the trial court did not err in reforming the lease agreement to conform to the parties' intentions.[3]

_____

[3]Plaintiffs argue that the lease should be construed against the Fire Department, as it hired the drafting attorney. However, "[a]s one commentator put it, 'Where there is a mutuality of assent but the resulting document intended to express such agreement fails to do so by reason of the mistake of the drafter, it is immaterial who employed the scribe. . . . No matter even if one of the parties is the drafter as the real concern is: Does the document express the agreement of the parties?" *Sikora*, 212 S.W.3d at 290 n.16 (quoting 27 Williston on Contracts § 70:93, at 499).

## B. *Notice of Non-Renewal*

Next, Plaintiffs argue that they effectively terminated the contract, pursuant to provision seven, by providing notice at the expiration of the original lease term. Plaintiffs contend that, even absent default, paragraph seven allows them to terminate the lease by providing notice upon the expiration of the original twenty-year term. As explained above, we find that paragraph seven relates only to default, and that it does not provide a means for terminating the contract outside of the listed defaulting circumstances.

Alternatively, Plaintiffs maintain that the Fire Department violated provision eleven's prohibition against assigning, mortgaging, or encumbering the lease, or subletting or permitting the property to be used by others without prior written consent, such that it could terminate the lease upon notice. As evidence of default, Plaintiffs point to the undisputed testimony presented at trial that the Fire Department allowed the premises to be used for birthday parties and family reunions without prior authorization from Plaintiffs.[4]

Mr. Wallace explained that the Fire Department is a voluntary operation which receives money from the county, occasional grants, and fundraisers. According to Mr. Wallace, the Fire Department collects a facility-use fee from events and it could not financially survive without such collections. He acknowledged that one birthday party was held where a fee was not collected. However, he stated that no fee was charged because it was Plaintiff Chandler who requested the use of the building.

The trial court found that the use of the building for events in which a fee was collected complied with the lease's stated purpose–the use of a volunteer fire department–as "[p]art of the requirement for a volunteer fire department includes fund-raising events." We agree that fundraising is a necessary component to the operation of a volunteer fire department. Accordingly, we find that the use of the property for fundraising events was not a "use by others" which would constitute a default of performance.

---

[4]At trial, both Ms. Wilson and Ms. Chandler testified that neither gave written notice to the Fire Department that such events constituted a default of the lease provisions. However, in their brief, Plaintiffs contend that an August 19, 2010 letter satisfied the notice requirement.

### C. Consideration for Lease Extension

Finally, Plaintiffs maintain that should the Fire Department be given the option to renew the lease agreement, they should be allowed to charge a reasonable rental rate. From our review of the record, it appears that Plaintiffs failed to raise the issue of consideration in the courts below. Thus, we will not address this issue on appeal. *See* **Tenn. R. App. P. 13.**

### V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellants, Tracey Chandler and Kelly Wilson, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.