WRH3-HT, J.,
delivered the opinion of the Court.
The complainant, and the defendant John C., are brothers; and the latter is the administrator upon the estate of William Birdsong, senior, who was their father, and who died intestate, the 26th of October, 1850.
*292 This bill was filed on the 3d of April, 1854, for the purpose of setting aside a conveyance of the share of complainant in the estate of his father, made to the defendant, John C., on the 2d day of November, 1850, and to obtain an account and decree against the administrator and heirs, for complainant’s share in the estate in favor of his wife and children. Letters of administration were granted to the defendant, John C., on the first Monday in November, 1850 — a few days after the date of said conveyance.
This conveyance is evidenced by a deed, absolute upon its face, from the complainant, of all his share and interest, real and personal in his father’s estate; and the same purports to be for the consideration of $1,000. It appears that John C. executed to complainant his five notes for the sum of $200 each, due the 25th of December, 1851, 1852, 1853, 1854, and 1855, which have never been paid. And in his answer he insists that this was the only consideration for said conveyance, and all he was ever to pay complainant for his share in said estate; and that he is absolutely entitled to the same, freed of trusts of every kind; and he avers that his purchase of this interest was, in all respects, fair and free of fraud.
This deed was attested by T. R. Richardson and H. A. Welch, and proved by them, and immediately registered.
It is charged in the bill, that immediately after the death of their father, the said John C. proposed to complainant to make him a transfer of all his interest in his father’s estate, with a view, as he said, to enable him, the said John, to hold it, and take care of it for *293 the benefit of complainant’s wife and children; representing to complainant that it would be wasted in his (complainant’s) hands, and would do his family no good; and that, conscious of his own weakness, anxious to provide for his family, and confiding in the honor of his brother, and believing that he would act in good faith towards him and them, he agreed to the proposition, and executed the conveyance aforesaid — not knowing, and being incapable of knowing, that it was to have the effect of transferring his whole interest away from his wife and family, or that it would be used for that purpose.
This allegation, as before stated, is denied in the answer; but the defendant, in this connection, states that he may have said that complainant would waste the $1,000, and that he desired to secure that for complainant’s wife and children — that this was his desire, and he supposes he said so; but again denies that he proposed securing the interest in the estate; admits that complainant was wasteful and intemperate at times, and poor; but insists he knew his rights.
The allegations in the bill are sustained by the deposition of M. E. Birdsong, a daughter of the complainant. She proves that John C. Birdsong came to her father on the same evening that the notes were executed, and said he intended we (meaning thereby, no doubt, the family of complainant) should -have our part of the estate when it was wound up — that it was a trade made not to stand; that he intended to buy them some land, and place them upon it; and said, who could cheat the children out of a cent ? And the reason he gave for doing this was, because he did not want his father’s *294 estate scattered about, and that if it was not for him it would soon be gone. As to the notes, he told complainant not to dispose of them, but that he wanted him to keep them until the estate was wound up, and he would lift the notes, and replace his part of the estate back to him; that the notes were not worth one-half or one-third his part of the estate; and that he intended to see that complainant’s family should have their part of the estate.
She, at the time, was very young, but her story is a consistent and natural one, and she is strongly corroborated by most of the important facts in the case, and by the depositions of B. F.' Bond, Jno Gr. Price, Wm. Knight, and others.
The defendant repeatedly said, for many years prior to his father’s death, that complainant was a drunken fool, and that it would be wrong for his father to give him any part of his estate; that he would drink it up as soon as he could swallow it, and it would go out of the family.
Complainant is shown, when at himself, to have but ordinary capacity, and when drinking, to be incapable of business, and easily overreached at all times. The defendant spoke of him as a wretch, and that he would as soon rob a goose as to cheat him, &e. The proof shows him to have been poor, degraded, and destitute.
The estate - of the intestate consisted of some twenty-three slaves, land, and other property, to say nothing of advancements.
As to its value, the answer of defendant admits, that, at the intestate’s death, it was worth from $12,000 o $13,000, and the proof more than sustains it; th& *295 making complainant’s share, ■which was one-fifth of the value, at least, $2,500; which defendant assumes he purchased for $1,000, at one to five years’ time — less than one-third of its value.
To countervail this proof, and much else of a like character to be found in this record, defendant proves efforts by complainant to sell to others before he bought, and that it is probable, if he had not taken it, others would; that he was not intoxicated on the day the deed was executed, though it appears he was just out of a debauch; and Richardson and Welch, the attesting wit nesses — one of whom drew the deed — and McGregor, at whose house it was drawn, are examined, and the sum and substance of their proof are, that though they did not hear the conversation which preceded and led to the trade, yet the deed was executed in their presence, and by them attested; that it was read to complainant, who was sober and knew what he was about, and they regarded it as a fair trade; and that he stated he thought the $1,000 a fair compensation for his share in his father’s estate, considering his situation, and the best he could do for himself and family; and that, when not drunk, he was capable of business. And it is further shown, that for some time afterwards he recognized the validity of the arrangement, and expressed himself satisfied with it, and that defendant would do right with him; and in a controversy with Price as to the notes, he notified defendant not to pay them to Price.
The Chancellor decreed for the defendant. We do not concur-in this decree.
It is true that mere inadequacy of price, independent of other circumstances, where the parties stand on *296 equal ground, and deal with each other without any imposition or oppression, will not set aside a sale. Inadequacy, of' itself, is only a badge of fraud; and it is clear that if advantage he taken, on either side, of the ignorance or distress of the other, it affords a new and distinct ground, and a very great inadequacy may form a presumption of oppression. In equity a conveyance will he set aside where it is obtained by undue influence over a person greatly under the power of another, if there is inadequacy of price, or clear ground of inference that a confidence reposed has been abused, or advantage has been taken of incompetency, weakness of understanding, or clouded or enfeebled faculties.
It is not necessary that the influence should be due to antecedent or extraneous circumstances; it may have arisen in the course of the same transaction in which it was exerted. It is enough to show such a condition of dependency from whatever cause, as to raise the presumption that the party was unable to protect himself, and to justify the interference of the law to protect him.
A conveyance made by a man of weak mind and in necessitous circumstances, for an inadequate consideration, has been set aside; and where a man unacquainted with business and of feeble] character, was induced to sell a legacy of $18,000 for $4,500, by means of the influence acquired over him by the purchaser, who took advantage of his ignorance of affairs and eagerness to obtain the money at once, to lead him to believe that the legacy was not worth a larger sum in hand, and might not he paid for many years — the sale was set aside.
*297 Contracts made by persons under the influence of liquor, -without being completely intoxicated, are governed by the same principles which apply in other cases, where one party is in a position to expose him to the exercise of an improper influence by the other.
If carried so far that the reasoning power is destroyed, the contract is void; hut when it falls short of this, the contract will not he avoided, unless undue advantage has been taken by one party, of the condition of the other.
If a party has been led into a hard and disadvantageous bargain, while excited by liquor, equity avoids it. And the same rule applies to persons whose minds are enfeebled by habitual intoxication, although not actually intoxicated.^
But it seem^a contract will not be set aside on the ground of undue influence, apart from fraud, where proper in itself, and for the advantage of the party who seeks to avoid it; as for instance, a conveyance by a man habitually intemperate — but not actually drunk —of all his property, in trust for his wife and children. Chesterfield v. Josener, and notes, White & Tudor, 420, 421; Hugenenen v. Bosely, and notes, White & Tudor, 64, 74.
These principles are decisive of this case. We are satisfied this conveyance was obtained in trust for complainant’s wife and children, and upon no other condition can it be allowed to stand. The $1,000 in notes, were merely intended to put complainant off until the estate could be settled and property secured to his wife and children, and not intended to be paid, but to be restored and the estate fixed on them. Defendant knew *298 he could not readily sell such notes, nor his share in the estate so entangled; and if he did sell the notes, he could still save something for his wife and children. We are, moreover, satisfied from this record, that defendant, in haste, and before administration, or complainant had time to know the debts or value of the estate, managed to become his adviser and friend as to the disposition of his share in the estate, to save it — not from his creditors, for we doubt if he had any credit —but from himself and his habits, and for his family and children. If so, his conduct was laudable. Why so anxious as to his brother’s share — even before his fathers death? And after his death, to keep off a sale to others ? And in this view, the satisfaction expressed by complainant with the arrangement, and so much relied on by defendant, has no force. The attempt now to hold the property by defendant must be regarded as an after-thought.
The transaction with Price is not in the way — for he disclaims all interest in the notes — and complainant has them to surrender to defendant.
The Chancellor rejected the most material of defendant’s proof, upon the ground of incompetency and illegality, and refused to reject certain of complainant’s depositions, as to the character of Scarborough, and which are not deemed very material; but we have not thought it worth while to go into this, since we think if we allow defendant’s proof so rejeeted,j and [reject the complainant’s so excepted to, the result is the same.
The wife and children of complainant are not parties ; but the bill sets up the trust in their favor, and without considering whether complainant might not file a *299 bill for the specific execution of the contract between Mm and defendant, and to set up tbe trust in their behalf, it is enough that we have power to remand the cause, that they may become parties. Code, sec. 3170.
The decree of the Chancellor will be reversed — the $1,000 in notes surrendered to defendant, John C. Birdsong, and a trust of complainant’s entire share in his father’s estate, established in favor of his wife and children.
The cause will be remanded to the end the proper parties be made, and that an account of complainant’s share in the estate of his father be had, in which will be embraced the increase since his father’s death, hires, rents and interest — making defendant all just and proper allowances — and in this account- an enquiry will be had as to advancements, and further proof taken on that subject ;■ and as to this matter this Court now makes no decision.
Decree reversed.
The defendant, John C. Birdsong, since the decree wras pronounced in this cause, has made application for a rehearing: 1st. Upon the ground that M. E. Birdsong — a leading witness — is one of the beneficiaries in the trust set up and established by the decree, and, therefore, is an incompetent witness, because of interest.
A conclusive answer to this is — that no exception, either general or special, to the reading of this deposi-on, was made in the Court below, and none can .b *300 taken here. This rule of practice is settled in Gunn et al. v. Mason et al., 2 Sneed, 637.
The reason of the rule and the authorities are there given, and it is founded in sense and sound policy.
A further answer to this objection is — that if we were to disregard the evidence of this witness altogether, the result must still be the same. The other evidence in the record demonstrates to our mind, that the conveyance to the defendant can only be allowed to stand as a trust for the wife and children of complainant.
2d. The next ground assumed for a re-hearing is, that the facts constituting the trust established by the decree, in favor of complainant’s wife and children, were not alleged, or in issue in the pleadings; and, therefore, they cannot be noticed by the Court, or constitute the basis of the decree.
This assumption is founded in a misapprehension of the state of the pleadings between these parties. It will be seen that the existence of this trust is expressly alleged in the bill and denied in the answer, and proof pro and con taken upon it.
It is true the wife and children of complainant are not parties, but he sets up the trust in their favor; and the litigation, instead of being with them directly, is between complainant and defendant..
It may very well be made a question, if complainant had not the right to file a bill to enforce the contract between him and defendant, out of which wras to arise a trust in behalf of complainant’s w-ife and children. But passing this by, how does the case stand? Here, it is palpable, the defendant has been fully heard as to this trust and the rights of these parties. The proof, *301 pro and con, has been exhausted. Then he has not suffered for want of an opportunity to adduce evidence of his defence. Then why, as to him, have a new litigation. If the wife and children of complainant were to file a second bill, or become parties by an amendment, the depositions and evidence already taken, could be used against defendant. It is not like the case of a judgment, which requires — to make it evidence — that there be mutuality between the parties. As to depositions the parties need not. be the same. If the issue be the same, and the party against whom the proof is offered has been allowed a chance to cross-examine, that is enough. 1 Greenl. Ev., sec. 553.
It is clear, _ here, that as between complainant and defendant, the latter has no right to hold this estate. A stronger case against him, to our mind, can hardly be stated.
Then there can be no contest between complainant and his wife and children, because the bill itself sets up the trust in them; and as between him and them admits the right to be in them, and so is the proof. Then what ought a Court of Chancery to do in such a case ? Put these parties out of Court and send them to a second and new contest over this estate? If such an objection as this were allowed, would it not be purely technical ?
A Court of Chancery cherishes forms no further than they contribute to the main object ■ of its existence, the attainment of substantial justice.- It struggles against technical rules which merely impede this object. It is enabled from its mode of practice to see, from time to time, that necessary parties are brought before it; and *302 this it can do, at almost any stage of a suit. 5 Hum., 318, 319.
The general rule, requiring all persons in interest to be made parties to the suit, is, in most cases, not, in any just sense, a right of the parties brought before the Court, but rather a rule prescribed by courts of equity to themselves in the exercise of their jurisdiction, founded upon their notions of public policy, or public convenience. It is, in a great measure, a rule of discretion, founded in the anxiety of those Courts to do justice among all the parties having an interest in the subject matter or object of the suit, whether that interest be mediate or immediate, present or future, for the purpose of suppressing future controversy and litigation. Story’s Eq. PL, sec. 135 a.
Accordingly, if the cestuis que trust 'or beneficiaries should not be made parties to the suit, and their interests are apparent, a Court of Equity will sometimes, as a matter of indulgence and to prevent further delay and expense, allow them (if they wish) to bring forward their claims by petition, in order that their rights may be protected. Story’s Eq. PL, sec. 208.
The plain meaning of the authority is, that they may be allowed to intervene and have the benefit of the proof already taken, and will not be put to a new bill and a second contest.
The ground upon which the decree goes, settles that defendant is the trustee to complainant’s wife and children. He is a party, and the case is settled against him. The re-hearing is, therefore, refused.
Re-hearing refused.