IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 27, 2015 Session

## WILLIAM C. KERST, ET AL. V. UPPER CUMBERLAND RENTAL AND SALES, LLC

**Appeal from the Chancery Court for Putnam County**
**No. 200749     Ronald Thurman, Chancellor**

_____

**No. M2014-00894-COA-R3-CV – Filed March 25, 2015**

_____

This is a contract case arising from the sale of a business. Appellant orally agreed to sell his fastener business to the Appellee. After Appellant allegedly violated the terms of the sale agreement, Appellee stopped making payments. Appellant filed suit to recover the balance of the purchase price. The parties later agreed to rescission of the sale and to allow the trial court to decide the issue of rescissory damages. The trial court heard evidence regarding such damages and entered an order awarding Appellant $8,601.73 in damages, plus the remaining inventory of unused old fasteners. Appellant appeals. We affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J. and BRANDON O. GIBSON, J., joined.

C. Douglas Fields, Crossville, Tennessee, for the appellants, William Kerst and Advanced Fasteners.

Henry D. Fincher, Cookeville, Tennessee, for the appellee, Upper Cumberland Rental and Sales, LLC.

# OPINION

## I. Background

This case began nearly a decade ago when William Kerst ("Appellant") orally agreed to sell his business, Advanced Fasteners, to Upper Cumberland Rental and Sales, LLC ("Upper Cumberland" or "Appellee"). Mr. Kerst began operating Advanced Fasteners in 2003; however, in 2004, he underwent open-heart surgery, which rendered him unable to work. In early May of 2005, Mr. Kerst orally agreed to sell his "business and inventory" to Upper Cumberland for $70,000. Upper Cumberland paid $20,000 down and agreed to pay the $50,000 balance in monthly installments over five years, at five percent interest. The agreement provided that Mr. Kerst would work as a salesman and that he would not compete with Upper Cumberland. Upper Cumberland made thirteen payments to Mr. Kerst and then stopped. Upper Cumberland asserted that it ceased making payments because of Mr. Kerst's alleged violation of the non-compete agreement.

On February 16, 2007, in response to Upper Cumberland's refusal to make payments, Mr. Kerst filed suit in the Putnam County Chancery Court ("trial court") for payment of the balance owed under the sale agreement. On April 2, 2007, Upper Cumberland filed its answer and counterclaims, including breach of contract, unfair competition, and tortious interference with contract. Mr. Kerst answered the counterclaims on May 21, 2007. The case was continued numerous times for reasons that do not bear on this appeal.

Upon the parties' agreement and at their request, the trial court entered an order dated February 22, 2012, rescinding the agreement between the parties. On December 18, 2013, the trial court heard evidence on the issue of damages. In an order dated January 9, 2014, the trial court ordered Upper Cumberland to return any unsold inventory it obtained from Mr. Kerst, and also awarded him $8,601.73. The trial court calculated the $8,601.73 by subtracting, from the $70,000 sale price, $15,558.81 for the value of the returned inventory and $45,839.46 for amounts already paid to Mr. Kerst. On January 13, 2014, Mr. Kerst moved the trial court to amend its judgment, or, in the alternative, for a new trial. The trial court denied the motion on April 16, 2014, and Mr. Kerst timely filed this appeal.

## II. Issues

Appellant raises multiple issues for our review. However, we perceive that there are five dispositive issues, which we state as follows:

1. Whether the trial court erred when it did not award lost profits to the Appellant.
2. Whether the trial court erred when it did not make an award to Appellant for the

2

business' goodwill.

3. Whether the trial court erred when it did not return the profits made by the Appellee to the Appellant on inventory it received in the sale.
4. Whether the trial court improperly assigned fault.
5. Whether the trial court's remedy constituted a reformation of the contract instead of a rescission.

### III. Standard of Review

The trial court heard this case without a jury. Accordingly, our review is *de novo* on the record, with a presumption of correctness afforded to the trial court's findings of fact. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008). This standard applies to our review of a trial court's rescission of a contract. *See **Klosterman Development Corp. v. Outlaw Aircraft Sales, Inc.***, 102 S.W.3d 621, 632 (Tenn. Ct. App. 2002); ***Morris v. Norwood***, No. E1999-01328-COA-R3-CV, 2000 WL 472871, at *4 (Tenn. Ct. App. April 24, 2000). "The equitable remedy of rescission is…a matter resting in the sound discretion of the trial court and the court should exercise the discretion sparingly." ***Klosterman***, 102 S.W.3d at 632 (citing ***Vakil v. Idnani***, 748 S.W.2d 196, 199 (Tenn. Ct. App. 1987)). Although the remedy of rescission is available, it "is not favored in Tennessee." ***Id.*** at 631. Typically, rescission is granted in cases of mutual mistake, *see, e.g.,* ***Robinson v. Brooks***, 577 S.W.2d 207 (Tenn. Ct. App. 1978); or fraud, *see, e.g.,* ***Richards v. Taylor***, 926 S.W.2d 569, 572 (Tenn. Ct. App. 1996) (citing ***Birdsong v. Birdsong***, 39 Tenn. 289 (Tenn. 1859)). In this case, however, the parties mutually agreed to rescind their agreement. Parties may agree that rescission is the proper remedy when the terms of an oral agreement to sell a business are disputed. *See **Morris***, 2000 WL 472871.

Because the parties agreed to rescind their agreement, the trial court's only task was to fashion the remedy. "Rescission is an equitable remedy involving the avoidance or setting aside of a transaction." ***Id.*** (citing ***Lamons***, 909 S.W.2d at 800). "[R]escission is designed to place both parties in the same position as they were in when the contract was contemplated." ***Lamons***, 909 S.W.2d at 800 (quoting ***Williamson v. Upchurch***, 768 S.W.2d 265, 271 (Tenn. Ct. App. 1988)). In order to achieve this goal, "a party seeking rescission of a contract must return, or offer to return, what he has received under it, and thus put the other party *as nearly as is possible* in his situation before the contract." ***Moore v. Howard Pontiac-American, Inc.***, 492 S.W.2d 227, 230 (Tenn. Ct. App. 1972) (emphasis added). Taking into account that we review a trial court's decision to grant a rescission under the abuse of discretion standard, we also review the trial court's remedy in rescission cases under the abuse of discretion standard. A trial court abuses its discretion when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." ***Eldridge v.***

*Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). When reviewing for an abuse of discretion, "an appellate court cannot substitute its judgment for that of the trial court." ***Pratcher v. Methodist Healthcare Memphis Hospitals***, 407 S.W.3d 727, 741 (Tenn. 2013). Applying the abuse of discretion standard in light of the law on rescission of contracts here, we specifically review whether the trial court placed the parties in a position as near as possible to their positions before the agreement was negotiated.

## IV. Analysis

### A. Appellant's Lost Profits

Appellant asserts that the trial court incorrectly applied Tennessee law when it awarded only the sale price of the business, as opposed to the sale price plus lost profits. Appellant cites ***Lamons v. Chamberlain***, *supra*, for the proposition that profits must be returned if a contract for the sale of a business is rescinded. Appellant's reliance on ***Lamons***, however, is misplaced. In ***Lamons***, this Court reversed a trial court's rescission of a contract for the sale of a business and instead awarded damages for breach of contract, which included lost profits. 909 S.W.2d at 801. Because the remedy mandated by this Court in ***Lamons*** was breach of contract, not rescission of a sale, ***Lamons*** has no precedential value in this case.

Appellee argues that the trial court was correct in not awarding the Appellant lost profits because there is no evidence that Advanced Fasteners was profitable at the time of this transaction. As discussed earlier, the remedy of rescission is designed to return the parties as nearly as possible to their status when the agreement was contemplated. *See* ***Lamons***, 909 S.W.2d at 800. Accordingly, it would only be proper to award Appellant lost profits if his business was profitable at the time of the transaction. During his testimony, Mr. Kerst was asked: "you don't know if you could have made a profit in 2005 had you kept Advanced Fasteners…?" Mr. Kerst responded: "At that point in time, no." We also note that Mr. Kerst's personal income tax returns show net losses for 2003 and 2004. Appellant argues that his tax returns do not provide an accurate picture of Advanced Fasteners's profitability because the returns take into account losses from other endeavors. Accordingly, Appellant contends, the tax returns cannot be used to determine whether Advanced Fasteners was profitable. Upon review of the record, however, we glean no evidence, apart from Mr. Kerst's testimony, that Advanced Fasteners was profitable at the time of this transaction. In not awarding lost profits, or making a finding that Advanced Fasteners was profitable, the trial court implicitly found Mr. Kerst's testimony regarding profitability to not be credible. "[A] trial court's determination of credibility will not be overturned on appeal unless there is clear and convincing evidence to the contrary." ***Allstate Ins. Co. v. Tarrant***, 363 S.W.3d 508, 515 (Tenn. 2012). In light of the implicit credibility findings and the lack of evidence supporting a finding that Advanced Fasteners was profitable at the time of the transaction, we conclude that the trial court did not err in denying an award for lost profits.

4

## B. Compensation for Good Will

Appellant also argues that the trial court failed to properly return the value of the business goodwill that Upper Cumberland acquired through its purchase of Advanced Fasteners. Specifically, Appellant argues that he will not be able to regain his retail customer-based business, and, consequently, he contends that he should be compensated for this loss. Appellee, of course, contends that Advanced Fasteners was not a profitable business at the time of the sale and had no goodwill at the time of the transaction. Appellee also argues that, under the terms of the sale, it acquired more than just a customer list and good will: it also acquired Kerst as a salesman and as a tool repairman, and it acquired his promise not to compete. Appellee argues that these promises had their own value, thereby reducing the amount of any goodwill the trial court could award. In its ruling, the trial court found that Upper Cumberland purchased the "inventory and customer list" and that the customer list was "basically the good will."

Because goodwill was implicitly contained in the purchase price, there is insufficient evidence to show that the existence of goodwill would raise the value of Advanced Fasteners beyond the $70,000 purchase price. The inventory received by Upper Cumberland at the time of sale was valued at $45,369.18. Appellant's brief asserts that the remaining $24,630.82 was for goodwill at the time of purchase. Appellant further argues that he is owed more for goodwill because of his inability to recover his customer base. It is undisputed that, at the time of the sale, Appellant was physically unable to operate his business. Furthermore, Appellant presented no evidence as to what monetary value the goodwill would have. As such, the trial court was constrained to make a decision regarding the value of the goodwill. Furthermore, there is insufficient evidence on which the trial court could assign a value to Mr. Kerst's lost retail customer base. Accordingly, we conclude that the trial court properly denied the Appellant an additional award for goodwill and lost retail customer base. Based on the parties' agreement to rescind the sale, the trial court's obligation was to fashion a rescission remedy returning the parties "as nearly as is possible" to their prior positions. In this case, due to lack of evidence and the passage of time, we conclude that the trial court restored the parties to their pre-agreement positions as nearly as possible.

## C. Profits from Sale of Inventory

Appellant also argues that the trial court erred when it did not award him profits from the sale of inventory Appellee acquired through its purchase of Advanced Fasteners. Again, as was the case with goodwill, the lack of evidence negates our ability to conduct any meaningful review of this issue. Although the record contains a spreadsheet of Upper Cumberland's profits from fastener sales, it does not specifically illustrate whether those profits are from the sale of inventory acquired from Advanced Fasteners or new inventory purchased later by Upper Cumberland. We also note these spreadsheets only cover the years 2005 through 2008, and Upper Cumberland did not post a profit each year

5

from the sale of fasteners. From the evidence, it does not appear that the trial court could have determined the profits or monies received by Appellee from the sale of inventory it acquired from the Appellant. As a reviewing court, given the state of the record, we cannot conclude that the trial court abused its discretion in not awarding profits from the sale of old fastener inventory acquired by Upper Cumberland.

## D. Improper Assignment of Fault

Appellant also argues that the trial court improperly allowed notions of fault to influence its ruling. Appellant asserts that because the trial court did not award lost profits, the trial court found fault with the Appellant's actions and fashioned the rescission remedy to reflect Appellant's fault. While the trial court did note, in its findings, that the Appellant may have acted in such a manner as to breach the agreement, the trial court also explicitly stated that its purpose was not "to decide … who is at fault here." Instead, the trial court stated that it only needed to determine "what the appropriate remedy would be to rescind what the parties perceived as the agreement and put the parties back in the position they were in…" A trial court speaks through its orders. *See Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). From the statements in the trial court's order, we conclude that there is no indication that the trial court's findings or the award in this case were influenced by notions of fault.

## E. Reformation Instead of Rescission

Appellant argues that the award he received is improper because it neither takes into account the depreciation of the Advanced Fasteners inventory, nor awards interest for the time period that Upper Cumberland has owned the business. Appellant contends that these omissions constitute an improper reformation of the parties' sale agreement that allows Upper Cumberland to purchase Advanced Fasteners at a much lower price than originally bargained.

Reformation of a contract is an equitable remedy involving the "judicial alteration of the provisions of a written agreement." *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006). "The basic purpose of reformation is to make the contract 'conform to the real intention of the parties.'" *Id.* (citing *Lebo v. Green*, 426 S.W.2d 489, 494 (Tenn. 1968)).[1] The award in this case in no way constitutes a reformation of the parties' agreement. A reformation of the parties' agreement would have left the sale of Advanced Fasteners intact, resulting in Upper Cumberland continuing to own the business and the remaining unused fastener inventory. Instead, the trial court ordered

---

[1] Courts may reform a contract when, "at the time of the contract, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain." *Sikora*, 212 S.W.3d at 286 (citing *Alexander v. Shepard*, 240 S.W. 287, 291-94 (Tenn. 1922)). Courts may also reform a contract when "only one of the parties was operating under a mistake of fact or law if the mistake was influenced by the other party's fraud." *Id.*

that the remaining inventory be returned to Mr. Kerst in order to place Mr. Kerst, as nearly as possible, in the position he was in prior to the sale.

Moreover, both parties agreed that rescission was the proper remedy to resolve their dispute. To award the Appellant interest and depreciation from the time of Appellee's purchase of Advanced Fasteners, as suggested, would place the Appellant in a far better position than he was in at the time of the sale, and, therefore, would not constitute a rescission. Additionally, Appellant's argument regarding the award fails to consider that the trial court did not offset the award for the commissions paid to Appellant by Upper Cumberland. Nor did the trial court offset Appellant's award by outside sales he made in alleged violation of the parties' non-compete agreement. Although the passage of time may have diminished the value of Advanced Fastener's original inventory, the trial court need only return the parties as near as possible to their positions prior to the sale agreement. Considering the passage of time and the other circumstances here, we conclude that the trial court affected a rescission and did not undertake to reform the parties' oral agreement as argued by the Appellant.

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellants, William Kerst and Advanced Fasteners Inc., and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE